## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Khaled A. Mubarak

August 25, 2005

Case No. (Criminal) 60228

By JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter came before me on the Defendant's Verified Petition for Writ of Error *Coram Nobis*, upon which I took testimony and heard argument from the defendant on January 24, 2005, and heard further testimony on August 8, 2005. Upon review of counsels' briefs and consideration of the testimony given and the argument made, I deny the defendant's petition for a writ of *coram nobis*, but grant, as alternative relief, the defendant's petition for a writ of *audita querela*.

A writ of *coram nobis* is available only for correcting clerical errors in the record. Va. Code § 8.01-677. A writ of *audita querela* is a common law writ "constituting the initial process in an action brought by a judgment defendant to obtain relief against the consequences of the judgment on account of some matter of defense or discharge, arising since its rendition and which could not be taken advantage of otherwise." *Black's Law Dictionary*, 120 (5th ed.). While it is no longer available in Virginia in civil cases, federal courts have held that it is available to defendants in criminal cases. *See Fajardo v. Commonwealth*, 19 Va. Cir. 162 (1990), and *United States v. Salgado*, 692 F. Supp. 1265 (E.D. Wash. 1988).

I find that the failure of defendant's former counsel to advise him of his ability to request a Judicial Recommendation Against Deportation ("JRAD") constituted ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. The defendant was denied effective assistance during his sentencing, a critical part of the criminal process. I find that the appropriate remedy is to set aside the original sentence and re-sentence the defendant to the same prison term which he received previously, give him credit for time served, and make a Judicial Recommendation Against Deportation, consistent with sentencing options available to me then and, by extension, now.[1]

In July of 1989, the defendant pleaded guilty to a charge of parental abduction. He was thereafter sentenced by the Honorable Johanna L. Fitzpatrick to a term of five years' imprisonment with all but ninety days of that sentence suspended. Since serving his sentence, the defendant has had no violations of law. The defendant has continued to live in the United States as a legal permanent resident, participating as a productive member of society. The defendant recently applied for citizenship, passed his citizenship test, and was expecting to be sworn in as a citizen of the United States. Instead, he was detained by the U.S. Citizenship & Immigration Services after they discovered his felony conviction from 1989. He is currently awaiting a hearing with immigration officials.

At the time of his conviction, the defendant was represented by counsel, although not the same counsel he has now. Prior counsel testified that he was unfamiliar with JRAD in 1989. He testified that, after sentencing, he sent a letter to the defendant while the defendant was incarcerated in the Fairfax County Adult Detention Center. In that letter, prior counsel advised the defendant that he (prior counsel) had spoken to an immigration attorney on the day of sentencing and that certain pleadings relating to deportation needed to be filed in the Circuit Court of Fairfax County within thirty days of sentencing. He further recommended that such pleadings be filed within twenty-one days to insure that the Circuit Court still had jurisdiction over the case. He gave the defendant the name and telephone number of an immigration attorney and advised the defendant to inform the jail of the need to call that attorney. The defendant testified that he never received such a letter. No further

---

[1] The Commonwealth, in its brief, raised the issue of whether this petition should have been brought in a separate civil proceeding rather than in the criminal action. However, the Commonwealth, by her Assistant Commonwealth's Attorney, waived such argument orally before this Court.

pleadings were ever filed on behalf of the defendant, and no JRAD was ever sought. I find that prior counsel sent the above-referenced letter to the defendant, but that the defendant never received it.

A JRAD was, at the time, permitted by federal law and would have allowed a state court sentencing judge to recommend that Mr. Mubarak not be deported for the crime of which he was convicted. 8 U.S.C. § 1251(b)[2] provided that eligible individuals could request a JRAD and would not be deported for the crime in which a JRAD was granted. This recommendation was binding on immigration officials, the State Department, the Attorney General, and the Justice Department. I find that, at the time of his conviction, the defendant would have been eligible to request a JRAD. 8 U.S.C. § 1251(b) states that only those who have committed offenses listed in subsection (a) were ineligible for a JRAD. Crimes that would have made one ineligible were those involving narcotics. Indeed, considering his standing in the community, the nature of the offense with which he was charged, the circumstances surrounding the charge, and further findings of this Court,[3] I find that this defendant would likely have been granted a JRAD had he known to ask for it.

Like defendants in all criminal cases, Mr. Mubarak had a Sixth Amendment right to effective assistance of counsel. Although Virginia has not addressed this specific issue, many other courts have held that failure to inform a defendant of the availability of a JRAD is ineffective assistance of counsel. *See Janvier v. United States*, 793 F.2d 449 (2d Cir. 1986); *United States v. Khalaf*, 116 F. Supp. 2d 210 (D. Mass. 1999); *Ittah v. United States*, 761 F. Supp. 157 (D. Me. 1989); and *United States v. Castro*, 26 F.3d 557 (5th Cir. 1994). These cases all stand for the proposition that failure to request a JRAD constitutes ineffective assistance of counsel and, upon a showing of actual prejudice to the defendant, require that the sentence be vacated. Although competent criminal defense counsel need not be an expert in immigration law, I find that compliance with the Sixth Amendment right to effective assistance of counsel required more than sending the letter to the defendant. The same attorney to whom prior counsel referred the defendant in the letter testified before me that failure to advise the defendant of his JRAD rights

---

[2] Although repealed in 1990, this code section was in effect at the time of defendant's conviction and sentencing.

[3] On August 30, 1991, this Court entered an order in which it found that the defendant had led "an exemplary life."

and failure to seek a JRAD from the sentencing judge were "outside the range of professionally competent assistance." For a defendant in the position of Mr. Mubarak, knowledge of the right to seek a JRAD from the sentencing judge and the filing of a petition for the same were fundamental to effective assistance of counsel. The failure to advise the defendant of his JRAD rights and the failure to file such a petition (if desired) violated the defendant's Sixth Amendment rights.

I find that the defendant did suffer actual prejudice. He did not seek a JRAD in 1989 that likely would have been granted which would have eliminated the quandary in which he now finds himself. He has continued to live in the United States, incident free, has a wife and children who are all citizens, and has maintained steady employment. The defendant was on the threshold of becoming a citizen when this conviction triggered deportation proceedings. Therefore, the defendant has made a showing of actual prejudice and his former counsel's failure to inform him of the availability of a JRAD meets the criteria of the above cases.

The question then becomes what the defendant's recourse may be. The Supreme Court of Virginia, the Court of Appeals of Virginia and the Fourth Circuit have not spoken on this issue. There are, however, several courts in other jurisdictions that have addressed the appropriate remedy in similar situations.

8 U.S.C. § 1251 reads, in pertinent part:

> The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply . . . (2) if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported. . . .

8 U.S.C. § 1251(b) (1970).

In *Zaitona v. I.N.S.*, 9 F.3d 432 (6th Cir. 1993), the Sixth Circuit ruled that a court could not vacate a conviction or sentence for the sole purpose of entering a JRAD. However, the Court determined that this applied only to a valid sentence. In *Zaitona*, the defendant had made no claim of ineffective assistance of counsel prior to the review of the case by the Sixth Circuit and that court found there was nothing in the record to allow it to evaluate such a claim.

Other courts agree. In *Bruno v. United States*, 336 F. Supp. 204 (W.D. Mo. 1971), the Court held that an invalid sentence restarted the thirty day period in which a defendant could request a JRAD. Similarly, in *Janvier, supra*, the Court found that ineffective assistance means that the defendant has received a constitutionally defective sentence. Therefore, the sentence may be set aside and a new sentence may be imposed. *Id.* at 455-56. Many other courts have adopted this argument. *See People v. Barocio*, 216 Cal. App. 3d 99, 264 Cal. Rptr. 573 (1990); *People v. Pozo*, 746 P.2d 523 (Colo. 1987); *People v. Huante*, 194 Ill. App. 3d 159, 550 N.E.2d 1155, 141 Ill. Dec. 109 (1990).

My determination that defendant's counsel was ineffective renders the defendant's original sentence invalid. This Court, therefore, must vacate the original sentence and impose a new, valid sentence. I do not find that knowledge by the defendant of JRAD rights in July of 1989 would have changed his decision to plead guilty. For that reason I decline to vacate the defendant's conviction.

Based on the above findings, I hereby vacate the defendant's sentence, sentence him to a prison term of five years with all but ninety days suspended, give him credit for time served, and make a Judicial Recommendation Against Deportation pursuant to 8 U.S.C. § 1251. Although the JRAD statute has been repealed since Mr. Mubarak was originally sentenced, this Court can and must sentence him in accordance with the sentencing statutes in existence at the time of his offense. As JRAD was available then, it is available now for a sentence imposed under the statutes in existence in 1989.